UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY<br><br>Plaintiff,<br><br>v.<br><br>SWISS REINSURANCE AMERICA CORPORATION, a foreign insurance corporation; and TRANSATLANTIC REINSURANCE COMPANY, a foreign insurance company,<br><br>Defendants. | No. C05-783Z<br><br>ORDER |

This case comes before the Court on Defendant Transatlantic Reinsurance Co.'s Motion to Compel, docket no. 13, and Defendant Swiss Reinsurance America Corp.'s Motion to Compel, docket no. 16. The Court has reviewed the briefs both in favor of and in opposition to these motions. The Court hereby GRANTS the Defendants' Motions to Compel, docket nos. 13 and 16.

## BACKGROUND

This case involves Plaintiff King County's claim that Defendants Swiss Reinsurance America Corp. ("Swiss Re") and Transatlantic Reinsurance Co. ("Trans Re") are obligated under insurance policies issued to the Plaintiff to reimburse it for the settlement costs and legal costs of a lawsuit brought by King County residents. See Notice of Removal, docket no 1, Jacobi Decl., at 8-11 (Complaint). The King County residents sued the County for

ORDER -1-

damages resulting from the adverse effects of living near a King County landfill. Id. The Defendants now ask the Court to compel the Plaintiff to submit this dispute to binding arbitration.

**1.     King County's Self-Insurance Program**

In the early 1990s, Plaintiff King County's Risk Management Committee, the body responsible for obtaining insurance for the county, adopted a program whereby King County would become self-insured. Anshutz Decl., docket no. 20, at ¶¶ 3, 4. King County developed a self-insurance policy document based on standard comprehensive general liability insurance available at the time. Id. at ¶ 4. King County established a $5,000,000 self-insured retained level and then purchased $10,000,000 in excess insurance limits over the self-insured retention. Id.

In 1995, King County sought to replace its existing limits with a new policy covering $10,000,000 in excess of its self-insured program document. Id. King County asked its broker of record, Willis Corroon ("Willis"), to secure quotes for reinsurance for $10,000,000 in excess of a $5,000,000 self-insured retention under King County's program document. Id. In September of 1995, Willis located insurance coverage through Defendants Swiss Re and Trans Re.

**2.     The Swiss Re Policy**

In September of 2005, the Assistant Vice President for Swiss Re, Vincent Friscia, Jr., sent a letter to Mike Croke of Willis regarding King County's need for reinsurance. Friscia Decl., docket no. 17, at ¶ 4, Ex. C. Attached to this letter was a sample copy of Swiss Re's certificate wording (the "Swiss Re Sample Certificate"). The Swiss Re Sample Certificate contained the following language:

> J. ARBITRATION. Any dispute between the Company and the Reinsurer arising out of the provisions of this Certificate or concerning its interpretation or validity shall be submitted to arbitration. Any party may initiate arbitration by giving written notice to the other party of its intention to arbitrate together with the name of its selected arbitrator. Within 30 days of receiving such notice the other party shall appoint an arbitrator. In the event that any party

ORDER  -2-

> fails to appoint an arbitrator within the time specified, the other party shall have the right to appoint said arbitrator forthwith. The two arbitrators named shall select a third arbitrator. The arbitrators shall be officials or former officials of insurance or reinsurance companies not under the control or management of any part of this Certificate. The arbitrators shall not be bound by judicial formalities or formal rules of evidence and shall give due consideration to the customs and usage of the insurance and reinsurance business. A majority decision in writing shall be final and binding. Unless otherwise allocated by the arbitrators, all costs of the arbitration proceedings, including the fees of the arbitrators, shall be borne equally by the parties.

Id., Ex. C (Sample Certificate).

On October 1, 1995, Swiss Re signed the original Confirmation of Casualty Facultative Binder ("Swiss Re Binder"). Nunn Decl., docket no. 21, at ¶ 2, Ex. A. The Swiss Re Binder, which consists of only one page, incorporated by reference King County's Self-Insurance Program Document, KCRMP 94-95. Id. The Swiss Re Binder established the following with respect to the policy: the parties to coverage (King County and Swiss Re); the terms of the coverage (the terms of KCRMP 94-95); the amount of coverage (a 50% share of $10,000,000, in excess of a $5,000,000 self-insured retention); the period of coverage (October 1, 1995 to July 1, 1997); and the cost of coverage ($362,710 for the full policy period broken into two payments). Id. The Swiss Re Binder did not contain an arbitration provision and it did not reference the Swiss Re Sample Certificate.

On March 4, 1996, Swiss Re issued a "Certificate of Casualty Facultative Reinsurance," certificate no. 1999448, reinsuring King County (the "Swiss Re Certificate"). Friscia Decl., docket no. 17, at ¶ 3, Ex. B. The Swiss Re Certificate contains all of the unique terms found in the Swiss Re Binder along with a number of general terms. These general terms include an arbitration provision identical to the provision contained in the Swiss Re Sample Certificate. King County's Risk Manager Jim Anshutz states that he never saw the arbitration provision in the Swiss Re Certificate and was unaware of its existence until the commencement of this litigation. Anshutz Decl., docket no. 20, at ¶ 10.

When the Swiss Re Certificate expired, King County and Swiss Re negotiated Renewal Reinsurance Certificate No. 2125205 ("Swiss Re Renewal Certificate"). Friscia

ORDER   -3-

1  Decl., docket no. 17, at ¶ 5, Ex. D.  The Swiss Re Renewal Certificate, issued on August 26,
2  1997, contains an arbitration provision identical to that in the Swiss Re Sample Certificate
3  and the Swiss Re Certificate.  Id.

4  **3.    The Trans Re Policy**

5         On September 21, 1995, Merle Elyse Shapiro, Vice President of S.J. Petrakis
6  Insurance Services, Inc. ("S.J. Petrakis"), sent a letter to Trans Re regarding King County's
7  potential order of reinsurance.  Levene Decl., docket no. 14, at ¶ 3, Ex. B.  This letter
8  contained a sample copy of Trans Re's certificate language (the "Trans Re Sample
9  Certificate") which Ms. Shapiro asked Trans Re to confirm it would use with King County.
10 Id.  King County acknowledges that S.J. Petrakis sent a copy of this sample certificate to
11 King County's agent at Willis, although no documentation confirming this has been
12 submitted.  Plaintiff's Response, docket no. 19, at 14, n.7.

13         The Trans Re Sample Certificate contains an arbitration provision requiring all
14 disputes arising out of the interpretation of the certificate or obligations under the certificate
15 to be submitted to the decision of two arbitrators.  Levene Decl., docket no. 14, Ex. B at 20.
16 If the arbitrators fail to agree, the matter will be submitted to the decision of an umpire
17 chosen by the arbitrators.  Id.  According to the Trans Re Sample Certificate, the arbitrator
18 and umpire shall be disinterested active or retired executive officials of fire or casualty
19 insurance or reinsurance companies domiciled in the United States.  Id.  The arbitration shall
20 take place in New York, New York.  Id.  The Trans Re Sample Certificate states that the
21 arbitrators and umpire are relieved from all judicial formality and do not need to follow the
22 strict rules of law.  The arbitrator and umpires shall settle any dispute under the certificate
23 according to an equitable, rather than a strictly legal, interpretation of its terms.  Id.

24         On September 29, 1995, Steve J. Petrakis signed a binder (the "Trans Re Binder")
25 detailing the unique terms of Trans Re's reinsurance policy covering King County.  Nunn
26 Decl., docket no. 21, at ¶ 3, Ex. B.  The Trans Re Binder contains the unique details of the

coverage, including the parties to the coverage, the amount of coverage, the premiums, and the term of the insurance. Id. The Trans Re Binder does not have an arbitration policy nor does it reference the Trans Re Sample Certificate.

On November 27, 1995, Trans Re issued a "Certificate of Casualty Facultative Reinsurance" (the "Trans Re Certificate") reinsuring King County. Levene Decl., docket no. 14, at ¶ 2, Ex. A. The Trans Re Certificate contains an arbitration provision identical to the one contained in the Trans Re Sample Certificate. Id., Ex. A at 12. King County's Risk Manager Jim Anshutz states that he never saw the arbitration provision in the Trans Re Certificate and was unaware of its existence until the commencement of this litigation. Anshutz Decl., docket no. 20, at ¶ 10.

On July 1, 1997, Trans Re amended the Trans Re Certificate to extend the policy expiration deadline for one month, to August 1, 1997, in consideration of an additional premium of $17,638. Levene Decl., docket no. 14, at ¶ 2, Ex. A at 9.

## DISCUSSION

The Plaintiff advances three arguments why the arbitration provisions in both the Trans Re and the Swiss Re Certificates are unenforceable. First, the Plaintiff argues that Washington law prohibits enforcement of arbitration provisions purporting to govern coverage disputes. Second, the Plaintiff argues that the arbitration provisions were not part of the parties' insurance agreements at the time of formation. Third, the Plaintiff argues that the arbitration provisions are both substantively and procedurally unconscionable.

**1.    The Federal Arbitration Act**

In 1925, Congress passed the Federal Arbitration Act ("FAA") to overcome courts' long-standing refusal to enforce agreements to arbitrate. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 270-71 (1995). "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a

body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

The FAA applies to all agreements to arbitrate that are (1) in writing and (2) in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.  Section 2 of the FAA "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce . . . ." Perry v. Thomas, 482 U.S. 483, 489 (1987). The arbitration provisions in both the Swiss Re Certificate and the Trans Re Certificate meet these requirements. Both Certificates are in writing. Further, both Certificates involve interstate commerce. The Swiss Re Certificate was issued by Swiss Re, a New York Corporation, from its San Francisco Office to King County, a Washington State Municipality. See Friscia Decl, docket no. 17, at ¶ 3, Ex. B. The Trans Re Certificate was issued from Trans Re's San Francisco office to King County. Levene Decl., docket no. 14, at ¶ 2, Ex. A.

Under the FAA, an agreement to arbitrate may be enforced by courts in two parallel ways: (1) by ordering a stay of litigation, and (2) by affirmatively ordering the parties to engage in arbitration. Moses H. Cone, 460 U.S. at 22. Pursuant to the FAA, once the Court is satisfied that the matter is referable to arbitration, the Court must stay the underlying litigation. 9 U.S.C. § 3.

**2.    Effect of Wash. Rev. Code § 48.18.200(1)(b)**

Plaintiff King County argues that Wash. Rev. Code § 48.18.200(1)(b) prohibits the arbitration of insurance coverage disputes. The Defendants argue that the Plaintiff's argument is wrong as a matter of law. The Court concludes that as a matter of law, Wash. Rev. Code § 48.18.200(1)(b) does not bar the arbitration of insurance coverage disputes.

Wash. Rev. Code § 48.18.200(1)(b) states:

> No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any

ORDER   -6-

condition, stipulation, or agreement . . .depriving the courts of this state of the jurisdiction of action against the insurer . . . .

The Plaintiff does not cite any Washington authority which holds that Wash. Rev. Code § 48.18.200(1)(b) renders unenforceable provisions which require parties to an insurance contract to arbitrate disputes. Keesling v. Western Fire Ins. Co., 10 Wash. App. 841 (1974), on which the Plaintiff primarily relies, holds that Wash. Rev. Code § 48.18.200(1)(b) did not invalidate a fire insurance policy's provision requiring arbitration of the appraisal of the actual amount of loss. Id. at 845. The court held that the arbitration provision did not deprive the court of jurisdiction because the provision was "not self-executing; and if the company does not pay the damages fixed by the appraisers, an insured must commence legal action, the appraisal must be confirmed by the court and judgment entered for the insured. The authority and control over the ultimate disposition of the subject matter remains with the courts." Id.[1]

    As in Keesling, the arbitration provisions at issue in this case do not deprive the courts of jurisdiction. The provision is not self-executing. This Court has jurisdiction and the Defendants must appeal to this Court for the provisions' enforcement. This Court may stay this litigation, retaining jurisdiction until the arbitration is complete. See 9 U.S.C. § 3. This Court has jurisdiction to vacate, modify, or correct the arbitration award under the provisions of 9 U.S.C. §§ 9, 10. Because the arbitration provisions in the Certificates do not deny the Court jurisdiction, they do not run afoul of Wash. Rev. Code § 48.18.200(1)(b) and the Plaintiff's argument to the contrary fails.

---

[1] The Plaintiff's citations to cases involving uninsured motorist policies are inapposite. None of these cases cite to Wash. Rev. Code § 48.18.200(1)(b) and therefore they do not support the Plaintiff's argument. See Hartford Accident and Indemnity Co. v. Novak, 83 Wash. 2d 576 (1974); Solnicka v. Safeco Ins. Co, 93 Wash. App. 531 (1999); Kroeger v. First Nat. Ins. Co., 80 Wash. App. 207 (1995); Kraus v. Grange Ins. Assn., 48 Wash. App. 883 (1987).

ORDER -7-

### 3.     Terms of the Contract

King County argues that the arbitration provisions in the Trans Re Certificate and the Swiss Re Certificate cannot be enforced because King County never agreed to them. King County argues that the Binders it agreed to with Trans Re and Swiss Re constitute the contracts between them, not the later issued Certificates. The Defendants argue that the Certificates, once issued, supercede the Binders and that the Plaintiff had a duty to read them.

Whether a party can be compelled to arbitrate is governed by the terms of the FAA. Under the FAA, arbitration is solely a matter of contract, and a party cannot be compelled to arbitrate any claims that he or she has not agreed to submit to arbitration. AT&T Tech., Inc. v. Communication Workers of Am., 475 U.S. 643, 648 (1986). The burden of establishing the existence of an agreement to arbitrate is borne by the party seeking to compel arbitration. Harrison v. Nissan Motor Corp., 111 F.3d 343, 348 n.8 (3d Cir. 1997).

### A.     Did the Contract contain an arbitration provision?

The Plaintiff argues that the contract between it and Swiss Re was formed on October 1, 1995, when King County agreed to the terms in the Swiss Re Binder. Similarly, King County argues that the contract between it and Trans Re was formed on September 29, 1995, when King County agreed to the terms of the Trans Re Binder. In essence, King County argues that the only terms of the contracts between it and the Defendants can be found in the Binders, rendering the later issued certificates meaningless.

"In determining whether a valid arbitration agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts." Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997). Washington follows the objective manifestation test for contracts. Keystone Land & Dev. Co. v. Xerox Corp.,152 Wash. 2d 171, 177 (2004). Accordingly, for a contract to arbitrate to form, the parties must objectively manifest their mutual assent to arbitrate, which is

ORDER   -8-

generally expressed by offer and acceptance. Id. at 178. The terms assented to must be sufficiently definite and the contract must be supported by consideration. Id.

The Plaintiff argues that the only terms to which it agreed are those found in the Trans Re and Swiss Re Binders. The Plaintiff argues that the terms found in the subsequently issued Trans Re and Swiss Re Certificates were not part of the contracts because King County never agreed to those terms. The Plaintiff does not dispute that its broker, Willis, received copies of Sample Certificates from both Swiss Re and Trans Re prior to the issuance of the Binders, the terms of which were identical to those in the subsequently issued Certificates.

The Plaintiff's argument is without merit. The Plaintiff's argument fails in part because of the nature of insurance binders under Washington law.

> A binder is a temporary insurance contract providing interim coverage from the date of application until the issuance of the formal policy . . . . [B]inders are not intended to include all contract terms and one must always look to the formal policy subsequently issued for a complete statement of the agreement.

Orsi v. Aetna Ins. Co., 41 Wash. App. 233, 242 (1985). The Washington Revised Code affirms that binders are temporary insurance contracts and that they are superceded by the issuance of the policy itself: "A 'binder' is used to bind insurance temporarily pending the issuance of the policy. No binder shall be valid beyond the issuance of the policy as to which it was given . . . ." Wash. Rev. Code § 48.18.230(1). The Trans Re Binder clearly states that "This is to certify that the undersigned have procured Insurance as hereinafter specific from certain Insurers. Insurance described herein has been effected, against which a Policy(ies) will be issued and in the event of any inconsistency the terms, conditions and provisions of the Policy(ies) shall prevail." Nunn Decl., docket no. 21, at ¶ 2, Ex. B.

The Plaintiff asks the Court to ignore the legally temporary nature of insurance binders, as well as the clear language of the Trans Re Binder which refers to a to-be-issued policy, and hold that the only contracts to which King County agreed were the Binders.

ORDER -9-

King County received and had an opportunity to review both the Trans Re and the Swiss Re Certificates. King County did not object to the arbitration provision in either Certificate. The arbitration provision of the Certificates are clearly marked, short and easy to read. King County agreed to extend both policies without objecting to the arbitration provision in either. King County's complaint in this matter cites to the Trans Re and Swiss Re Certificates as the governing policy documents, not to the binders. See Notice of Removal, docket no 1, Jacobi Decl., at 8-11 (Complaint at ¶¶ 2, 3). Finally, under Washington law neither the Trans Re nor the Swiss Re binders are valid, as the policies to which they were given have been issued. See Wash. Rev. Code 48.18.230(1). All of these factors manifest King County's intention to be bound by the terms of the Trans Re and Swiss Re Certificates, including its arbitration provision. King County's arguments to the contrary fail.

### 4. The Unconscionability of the Arbitration Provisions

The Plaintiff argues that the Arbitration Provisions in the Certificates are both substantively and procedurally unconscionable. The Plaintiff argues that the contract provisions requiring arbitration should therefore be invalidated. "Although federal and state courts presume arbitrability, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ." Adler v. Fred Lind Manor, 153 Wash. 2d 331, 342 (2004) (internal quotations omitted). Washington recognizes two categories of unconscionability, substantive and procedural. Id. at 344. The Court concludes as a matter of law that the arbitration provisions are neither procedurally nor substantively unconscionable.

#### a. Procedural Unconscionability

Procedural unconscionability is found when an irregularity in contract formation leads to a lack of meaningful choice in the circumstances. Zuver v. Airtouch Communications, Inc., 153 Wash. 2d 293, 304 (2004). To determine if the Plaintiff lacked meaningful choice,

ORDER  -10-

the Court must examine: "The manner in which the contract was entered, whether [King County] had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print." Id. (internal quotations omitted).

King County argues that "the addition of the arbitration clause months after the parties had negotiated their agreement constituted an unfair surprise to King County that renders the arbitration provision unconscionable." Plaintiff's Response, docket no. 19, at 20-21. However, both Trans Re and Swiss Re provided King County's broker with samples of their standard contract language before issuing the Binders and the final Certificates. The language in the Trans Re and Swiss Re Sample Certificates was identical to the language in the later issued Certificates. The Trans Re and Swiss Re Certificates' arbitration provisions were not hidden in a maze of fine print, they were easy to find on the back of the Certificates. Finally, given King County's size and sophistication as a major municipality, it stretches the limits of credulity to believe that King County did not expect Trans Re and Swiss Re to issue insurance policies with terms more complete than those outlined in the temporary Binders. Insurance binders are by definition temporary and are not intended to include all of the terms of the insurance contract. Orsi, 41 Wash. App. at 242. The issuance of the Certificates with their additional language, including an arbitration provision, was not an unfair surprise. The fact that King County's Risk Manager chose not to read the language on the Certificates does not render the arbitration provision unconscionable. See Anshutz Decl., docket no. 20, at ¶ 10.

### b.     Substantive Unconscionability

Under Washington law, a contract may be found substantively unconscionable "where a clause or term in the contract is alleged to be one-sided or overly harsh." Zuver, 153 Wash. 2d at 303. King County argues that the arbitration provisions are substantively unconscionable because they mandate the use of a panel that consists of officials or former

ORDER   -11-

officials of insurance or reinsurance companies and because they require the arbitrators to give consideration to the customs of the industry.

### i. Choice of Arbitrators

King County argues that the arbitration provisions' requirement that the arbitrators be officials or former officials of insurance or reinsurance companies renders the provision substantively unconscionable. King County admits that this provision "might be unobjectionable in an agreement between an insurer and a reinsurer." Plaintiff's Response, docket no. 19, at 17. However, because King County is a self-insurer, it argues, the arbitrators would have an industry bias that would tip strongly and only in favor of Swiss Re and Trans Re. Id. King County analogizes itself to an insured in this case, and argues that it is not in the business of insurance. The Defendants argue that King County's Risk Management Program is an insurer. King County has "developed a manuscripted self-insurance document based on standard comprehensive general liability insurance available at the time." Anshutz Decl., docket no. 20, at ¶ 4; Friscia Decl., docket no. 17, Ex. A.

The cases the Plaintiff relies on to show unconscionability of this provision are inapposite. None of these cases address this type of provision in an insurance contract between a self-insured and a re-insurer. See Kruger Clinic Orthopaedics, LLC v. Regence Blueshield, 123 Wash. App. 355, 371-72 (2004) (holding substantively unconscionable arbitration provisions which stated that "all determinations of Regence shall be afforded deference" and "the standards to be applied by the arbitrator shall be whether Regence has acted arbitrarily and capriciously" in a contract between a medical services provider and a health care services contractor); Dow Corning Corp. v. Safety Nat'l Cas. Corp., 335 F.3d 742 (8th Cir. 2003) (addressing arbitration provision between an insured and an excess insurer); Hope v. Superior Court, 122 Cal. App. 3d 147, 154, 175 Cal. Rptr. 851 (1981) (addressing an arbitration provision in a contract between a member of the New York Stock Exchange and two of its employees who were not members; the provision required arbitrators to be

ORDER  -12-

members); Lewis v. Prudential-Bache Securities, Inc., 179 Cal. App. 3d 935, 944-45, 225 Cal. Rptr. 69 (1986) (selection of arbitrators under NYSE rules unconscionable, citing Hope).

In this case, the arbitration provision at issue is in a contract between an insurer and a re-insurer. By deciding to become self-insured, King County became an insurer. The arbitration provision calls for all arbitrators to be industry insiders, active or retired officials of insurance or reinsurance companies. See Friscia Decl., docket no. 17, at ¶ 4, Ex. B (Certificate at J); Levene Decl., docket no. 14, at ¶ 2, Ex. A at 12. King County has itself become a member of this industry by deciding to self-insure. This provision is not substantively unconscionable.

### ii. Arbitrator's Consideration of "Industry Custom"

King County argues that the arbitration provisions' requirement that the arbitrators give consideration to the customs of the insurance and reinsurance industry and that the arbitrators are not bound by strict legal interpretations of the Certificates or the rules of evidence renders the provisions unconscionable. King County argues that this requirement is one-sided in favor of the Defendants.

King County does not cite any compelling precedent that such a requirement is substantively unconscionable. The Court finds that consideration of the customs and practices of the insurance industry by the arbitrators of an insurance coverage dispute is common sense. Further, that the arbitrators are not bound by the rules of evidence or judicial formalities is inconsequential. Arbitrations in general have relaxed rules of evidence and do not require all of the formalities of a court trial. The Court finds that these sections of the arbitration provisions are not substantively unconscionable.

## CONCLUSION

The Swiss Re and Trans Re Certificates, not the earlier issued Binders, constitute the contract between King County and the Defendants. The arbitration provisions in these Certificates are not barred by Washington law. These arbitration provisions are also not

ORDER  -13-

substantively nor procedurally unconscionable. The Court GRANTS the Defendants' Motions to Compel, docket nos. 13 and 16, COMPELS the parties to arbitrate in accordance with the arbitration provisions in the Certificates, and STAYS this case pending the outcome of the arbitration.

IT IS SO ORDERED.

DATED this 31st day of August, 2005.

_____
Thomas S. Zilly
United States District Judge

ORDER -14-